## MAY *v.* JUNEAU CO.

*(Circuit Court, W. D. Wisconsin.* February 11, 1887.)

1. PATENTS FOR INVENTIONS—LIABILITY OF COUNTY FOR INFRINGEMENT—FRAUD OF CONTRACTOR FOR COUNTY JAIL.

A contract for building a county jail provided for a patent lock device, which was put in by the contractor or a subcontractor, but without authority from the owner of the patent. In less than two years after the county took possession of the jail the patent expired, and in the mean time the lock device was not used. The county authorities knew nothing of the contractor having put in the lock without authority from the patentee. *Held,* that the county was not liable in tort for infringement of the patent.[1]

2. SAME—ASSIGNMENT—DAMAGES FOR PRIOR INFRINGEMENTS.

The assignment of a patent does not ordinarily transfer the right to damages for infringements prior to the assignment; and *held,* that a sale and assignment by an administrator, under order of court, of a number of patents belonging to the deceased, some of which had expired, the sale being for a nominal sum, contained no circumstances to vary the general rule.

*G. W. Hazleton, (M. C Burch,* of counsel,) for plaintiff.
*F. S. Veeder, (Pinney & Sanborn,* of counsel,) for defendant.

BUNN, J., *(charging jury.)* This is an action of trespass on the case under the laws of congress for the infringement of a patent-right. The evidence being in on both sides, the defendant's counsel now asks the court to instruct the jury to return a verdict for the defendant, upon the following grounds, to-wit: *First,* that the action being in tort for the infringement of a patent-right, the county is not liable; *second,* the assignment of the patent from the executor to the plaintiff did not carry with it the right to maintain actions for infringement of the patent occurring previous to the assignment of the patent, and during the life-time of her husband, the patentee.

When this case was before the court upon demurrer to the complaint, the first question above stated was argued and submitted, and the court looked into the authorities, and considered the question of the liability of a county in such a case. The demurrer was overruled *pro forma,* and the question reserved for further consideraion upon the trial, when it was supposed the facts would more precisely appear. The evidence is now in, and there is no question made about the facts. From these it appears that the plaintiff's patent consists in a certain device for locking and unlocking at once all the cells of a jail by the sheriff or turnkey from the outside, standing in a position where he can view the interior of the jail, and observe the situation and attitude of the prisoners, and so shield himself from assault by any desperate or ill-disposed prisoner. The pat-

---

[1] A city is liable in its corporate capacity for the infringement of a patent, Munson v. City of New York, 3 Fed. Rep. 339, although the infringement was by the fire department of the city, and such department was separately incorporated, Brickill v. City of New York, 7 Fed. Rep. 479.

ent was issued to Edwin May, October 4, 1859, and was to run 14 years, or until October 4, 1873. There was an extension for seven years, which continued the life of the patent until October 4, 1880, when it expired. The Juneau county jail was built by a contractor, under a contract made with a committee acting for the county, in the summer of 1878. The contract provided for one of these locks, and the contractor, through a sub-contractor of the iron work of the jail, pursuant to his contract with the committee, put it on in the fall of 1878. The evidence, which is uncontradicted, shows that the county took possession of the jail about the first of January, 1879, but that this lock device was not used during that or the succeeding year, until after October 4, 1880, when the patent expired, and that neither the building committee, sheriff, nor architect knew anything of the patent, or that the contractor or subcontractor had put in the device without authority from the patentee.

Under these circumstances, it is difficult to see upon what principle the people of the county, who must be taxed to pay any judgment the plaintiff may recover, can be held liable in tort for the infringement. The contractor, no doubt, might be made liable if he put in the device without authority from the patentee. And my first impression was that the county, if it adopted the device and used it, could not be heard to say that it had not authorized it, and in doing so had infringed the plaintiff's patent. But the more I have thought of the question, and looked into the adjudged cases, the more have I been led to the conclusion that there is no principle of law, in the absence of any statutory provision, by virtue of which the county can be held in this form of action. The same question was argued on general demurrer before the United States circuit court for the Southern district of Ohio in the case of *Jacobs* v. *Board Com'rs Hamilton Co.*, 1 Bond, 500, and it was there held that the board of county commissioners could not be made liable in their official capacity; following *Commissioners Hamilton Co.* v. *Mighels*, 7 Ohio St. 109, a leading and well-considered case, where all the authorities are reviewed. The question has also been decided in the same way by the supreme court of Iowa, and by various other courts. It would be difficult to answer the reasoning of these cases. At least, I have found it so. There are also some facts in this case, very favorable to the county, now appearing on the trial, which did not appear in the adjudged cases referred to, and which were not presented by the demurrer in this case.

The way it now appears, from the undisputed evidence, is that the tax-payers of the county, who are the real parties in interest defendant, have had nothing whatever to do with the alleged infringement of the plaintiff's right. They have not infringed it themselves, nor authorized any one else to so infringe it; and, if this is so, it is difficult to discover upon what principle they can be made to suffer as for a trespass. They have paid for what they got, and got what they paid for, without any knowledge or intimation that anybody's rights had been infringed by the contractor until this suit was brought; and, though they paid the contractor for it, they had no use of the plaintiff's device until after the

patent had expired. Whether they have ever used it since I believe does not appear in the evidence.

I am unable to discover anything in the case to connect the building committee with the infringement of the patent; but, even if there was, it would by no means follow that the consequence of the malfeasance could be visited upon the county. They were appointed by the authorities of the county, the county board of supervisors, for certain specified and limited purposes. They were to make, receive, and examine plans and specifications, receive bids, and let the contract on behalf of the county. Their authority did not extend to the doing of any unlawful act whatever, and therefore, if they had infringed the plaintiff's right in so doing, they were not acting within the scope of their authority. There is no one authorized to act as the general agent of a county. The relation of principal and agent does not exist between a county and any of its officers. All its officers are chosen with certain special and enumerated powers, which they cannot transcend. So long as they keep within these powers the county is bound, but no further.

The county itself is but a political subdivision of the state, created by the sovereign power of the state, and set apart for certain political and administrative purposes. The authority which it exercises is but part and parcel of the general police and administrative power of the state. The people of each county, it is true, have power to tax themselves for the building of a court-house and jail, and it is their duty to do so; but these, again, when constructed, are a part of the general agency and appliances which the state adopts for the general administration of justice in the state, and the people of the county have only an interest in them in common with all the people of the state. The administration of civil affairs is imposed upon the county, not at their own solicitation, but by the sovereign power of the state. It is not so with municipal corporations proper, like cities and villages, which obtain their charters upon request, and which are granted certain privileges and franchises which are of value to the incorporators, and in which they have a direct interest not shared by others. And this seems to be one ground, perhaps the main ground, of distinction between the liability of cities and villages, which are municipal corporations proper, on the one hand, and towns and counties, which are but *quasi* corporations, on the other. The former may be held liable for the misfeasance or non-feasance of their officers acting in the line of their authority, while the latter, it is generally held, cannot be, unless made so by statute. The distinction is well grounded, and, I am inclined to believe, though with no very high degree of confidence, is applicable to the case at bar.

But on the proposition that the undisputed facts of the case do not implicate the building committee in the alleged wrongful act I have something more of confidence. The committee let the contract to certain builders or contractors, engaged in an independent calling, to furnish all materials, and construct the jail according to certain plans and specifications. Among other things, the contractors were to put in this device for locking and unlocking the jail and cells, which the committee

then found in use in other jails and prisons of the state. Is there any implication that the committee, in so doing, authorized or contemplated a trespass? Is not the implication rather that the contractor was to put this lock in, as he did everything else, at his own expense, and in a legitimate way, the county paying for the building when finished? Suppose the contract had provided that the builder should construct the chimneys of Philadelphia pressed brick, or shingle the roof with sawed shingles. Suppose, further, that there was a patent upon the manufacture of Philadelphia pressed brick, or upon sawed shingles. The contractor, instead of bargaining with one who owns the patent, or has the right to manufacture these articles, takes them, we will say, by a trespass, from some person who has made them in violation of the patent. They are put into the structure of the jail, and become a part of the realty. The title changes, though the articles are taken by a trespass. The county, without any knowledge of the wrong, accepts the building, and pays the contractor. Is it not evident that the owner of the brick, or of the shingles, though taken from him wrongfully, can neither reclaim his property, nor maintain trespass against the county? And is the owner of the patent in any different or better plight? Must he not look to the contractor or to the manufacturer for redress, rather than the people of the county, or the building committee, who are innocent of any wrong?

2. On the other point it appears that Edwin May, the patentee, was the owner of the patent at the time of the alleged infringement. He died February 27, 1880, and Edwin Forrest May was appointed his executor. On June 7, 1880, Edwin Forest May resigned his trust as executor, and on that day George F. McGinnis was duly appointed administrator *de bonis non* with the will annexed of the estate of said Edwin May, deceased. On December 30, 1880, the administrator petitioned the probate court of the proper county for leave to sell this and other patents belonging to the estate of the deceased, representing that they were of little value, and constituted all the property belonging to the estate not then disposed of. Leave was granted to the administrator to sell the patents, and on March 6, 1882, an assignment in writing was made of this and other patents to the plaintiff, the operative clause of which assignment is as follows, after enumerating certain patents, all of which were still in force except the one in suit:

"Now, therefore, to all whom it may concern, be it known that for and in consideration of the said sum of fifteen (15) dollars to me in hand paid, and in pursuance to the order and authority aforesaid, I, the said George F. McGinnis, as administrator of the estate of said Edwin May, deceased, have sold, assigned, transferred, and set over, and do hereby sell, assign, transfer, and set over, unto the said Sarah May, all the right, title, interest, claims, and demands whatsoever which the estate of said Edwin May, deceased, has in, to, by, under, and through the said improvements, and the letters patent and extensions thereof therefor aforesaid; the same to be held and enjoyed by the said Sarah May for her own use and behoof, and for the use and behoof of her legal representatives, to the full end of the term for which said letters patent and extensions thereof are or may be granted, as

fully and entirely as the same would have been held and enjoyed by said estate had this assignment and sale not been made, and as, by and under the order and authority aforesaid, I, as such administrator, can or ought to grant, sell, and assign the same."

The question is whether this assignment carries with it the right of action for infringements of the patent while Edwin May was the sole owner; and it seems clear, on principle and authority, that it does not. The language used refers only to the then present and future interest in this patent, and cannot be construed to cover rights of action which accrued to the patentee for infringements during his life-time.

The precise point was decided by Judge BLATCHFORD in the case of *Dibble* v. *Augur*, 7 Blatchf. 86. The language of the assignment there was as follows: "All his, said Robertson's, right, title, interest, claim, or demand whatsoever in, to, or under the said letters patent." This language was held to refer wholly to the future, and to convey only the right to claims for infringements which should arise after the assignment. But there is still higher authority upon this question. The same point was ruled by the supreme court in the case of *Moore* v. *Marsh,* 7 Wall. 515, where it was held that the original owner of a patent, who has sold his right under a patent, may recover for an infringement committed during the time he was the owner. In that case the patentee had assigned a half interest in the patent, and after the assignment he brought action to recover damages for an infringement committed before the assignment, and while he was the sole owner, and the court say that unless he can maintain the action there can be no redress, as it is too plain for argument that a subsequent assignee or grantee can neither maintain an action in his own name, nor be joined with the patentee in maintaining it, for any infringement of the exclusive right committed before he became interested in the patent. The court further adds:

"Undoubtedly the assignee *thereafter* stands in the place of the patentees, both as to right under the patent and future responsibility; but it is a great mistake to suppose that the assignment of a patent carries with it a transfer of the right to damages for an infringement committed before such assignment."

No more than would the sale of a farm carry with the title the right to sue for trespasses committed upon the land previous to the conveyance.

But it is claimed that the circumstances under which the assignment in this case was made should be looked into to determine the intention of the parties. But I am unable to discover anything in these circumstances to take the case out from the ordinary rule that when the writing is clear and unambiguous in its terms, that there is no need to resort to construction, and that the words are to be interpreted according to their usual and natural meaning. It seems there were several patents belonging to the estate. Some of them—I think this—had already expired. They were represented in the petition for leave to sell to be of little value. The order of the court grants leave to sell the patents. But neither the petition nor the order of the court contains any hint of any right to

damages for previous infringements.    The consideration named for the
assignment, $15, is merely nominal, which would rather make against
the idea of an intention to sell anything more than the patents.    It may
just as well be supposed that the administrator knew nothing of these
previous infringements, or considered them of no value, and therefore
had no intention of assigning the right to sue for them, as that he knew
of them, and failed to ask leave to sell the right, or to use apt language
for that purpose in the assignment; or he may have considered them too
valuable to sell for so inconsiderable a sum.    In any case, I see no
reason for going outside the language to determine the intention; or, if
we should be at liberty to do so, I find nothing in the situation of the
parties, or the circumstances of the case, to take it out of the general
rule of interpretation.

I think it my duty to say to you that you may return a verdict for
the defendant.